IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LYLE MARK COULTAS, | Civ. No. 3:11-cv-45-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| STEVEN PAYNE, individually and in his Official Capacity as Oregon State Crime Laboratory Detective; CARROLL TICHENOR, Yamhill County Judge; DEPARTMENT OF THE OREGON STATE POLICE; YAMHILL COUNTY DISTRICT ATTORNEY'S OFFICE; CURT GILBERT, individually and in his Official Capacity as Yamhill County Jail Commander; YAMHILL COUNTY JAIL; RUSSEL LUDWIG, individually and in his Official capacity as a Yamhill County Sheriff Detective; YAMHILL COUNTY SHERIFF DEPARTMENT; THE STATE OF OREGON, | |
| Defendants. | |

OPINION AND ORDER        1        {KPR}

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Lyle Mark Coultas ("Coultas") has alleged claims against Defendants Curt Gilbert ("Gilbert"), Yamhill County Jail Commander; Russel Ludwig ("Ludwig"), Yamhill County Sheriff's Detective; the Yamhill County Jail ("the Jail"); and the Yamhill County Sheriff's Department ("the Sheriff's Department") (collectively "Defendants"). Defendants move for summary judgment on the ground that Coultas's claims are barred by the statute of limitations. The court concludes that Coultas's section 1983 claim is barred by the statute of limitations, but that there are genuine issues of material fact with respect to his claim for unlawful deprivation of property.

*Factual Background*

Coultas was arrested on March 21, 2001, and was originally charged with twenty-three different violations for conduct taking place between 1996 and 2001. According to Coultas, upon his arrest he was illegally interrogated by Ludwig, who did not give him a *Miranda* warning and questioned him without a lawyer present. Coultas's home was searched and his personal property seized, which property was delivered to the OSP crime lab. A report by the Sheriff's Department details the items seized from Coultas's residence on March 21, 2001. The list includes videos, Coultas's computer, computer disks and other miscellaneous parts, as well as a scanner and a roll of film. (Plaintiff's Response Ex. 5.) On April 12, 2001, Coultas met with his court-appointed investigator and attempted to give him a written note with information establishing an alibi for some of his alleged crimes. The note was confiscated by a guard who subsequently gave it to the prosecuting attorney. Coultas was found guilty of a number of the charges and was sentenced to a

lengthy period of incarceration.[1]

In July 2002, Frank Stoller ("Stoller"), Coultas's post-conviction review counsel, requested a copy of Coultas's Yamhill County Correctional Facility inmate file. When first produced, the file lacked certain relevant documents, namely the officer reports and the complaints and responses associated with Coultas's incarceration. The Sheriff's Department subsequently acknowledged the absence of the written reports and forwarded them to Coultas's counsel. (Pl.'s Resp. Ex. 9.)

In the meantime, Coultas petitioned for post-conviction relief. On June 25, 2007, Malheur County Circuit Court Judge James Hargreaves granted Coultas's petition. Judge Hargreaves concluded that Coultas had suffered inadequate representation by both trial and appellate counsel in violation of both state and federal constitutions. He wrote: "Based upon the above findings by the Court, Petitioner[']s convictions will be reversed and the case remanded for a new trial." (Warren Decl., Ex. 3 at 5.)

In February 2007, Coultas's court-appointed investigator in the underlying criminal matter, Jack Ashworth ("Ashworth"), submitted an affidvait. He stated that evidence, in the form of a document entitled "190 Page Location Report, File Created Date, File Last Accessed Date, File Last Written Date," was not included in the evidence produced by the defense in conjunction with Coultas's criminal case. (Pl.'s Resp. Ex. 6 at 2.) Ashworth also testified about the incident involving the allegedly exculpatory alibi evidence:

> On one occasion when I was visiting Coultas in the Yamhill County Jail he passed to me through the "pass-through" slit handwritten notes that he prepared. He had indicated to me that the notes he prepared related to alibi evidence and alibi witnesses with respect to one of the counts in the indictment. . . . The notes were

---

[1] The record is unclear as to the actual length of the original sentence. However, the actual length is irrelevant for purposes of this motion.

OPINION AND ORDER                                3                                {KPR}

seized by the jail personnel and I was escorted out of the jail. The jail personnel told Coultas and myself that it was a violation of jail policy for an inmate to pass documents to a private investigator. I do not know what happened to the notes after they were seized by the jail personnel. On many occasions previous to this incident I have had inmates pass documents to me.

(Pl.'s Resp., Ex. 6 at 3.)

Stoller also sought to recover Coultas's confiscated property. On April 9, 2008, the property seized in conjunction with Coultas's case was released, at which point it was revealed that it had been lost, sold, or destroyed when Coultas's residence was left vulnerable to looting.

Of the twenty-three original charges, all but two were dismissed.[2] On January 30, 2008, Coultas pleaded no contest to the remaining charges of felony sexual abuse. (Warren Decl., Ex. 1 at 3.) These counts were reduced to misdemeanors, for attempted sexual abuse in the first degree, on June 16, 2009, which judgment was nunc pro tunc, and dated back to January 30, 2008. (Pl.'s Resp., Ex. 13 at 2-3.)

## Discussion

This motion requires the court to determine the particular claims alleged by Coultas, the statute of limitations applicable to each claim, and the date of accrual of each claim. Coultas's second amended complaint ("the complaint") makes the following allegations with respect to the Yamhill County Defendants. First, that "Defendants, each of them, violated Plaintiff's right to Due Process as guaranteed by and through the 14th Amendment to the U.S. Constitution or they interfered with Plaintiff's right to a fair trial and right to effective counsel." (Second Amended Complaint ("Compl.") 2.) Second, Coultas alleges that the personal property that was confiscated

---

[2] Four of the original charges were dismissed on October 5, 2001. Seventeen of the original charges were subject to a Judgment of Dismissal entered on January 30, 2008. (Warren Declaration, Exhibit 1 at 1-5.)

in connection with his arrest was illegally destroyed in 2002, and that a guard at the jail illegally confiscated evidence from Coultas's court-appointed investigator. On these allegations, Coultas has at least attempted to allege claims for civil rights violations under 42 U.S.C. § 1983 ("section 1983") and for unlawful deprivation of property[3], the particulars of which are examined below.

I.   Statutes of Limitation

   A.   Section 1983

Coultas has alleged facts which may give rise to a section 1983 claim for violation of his Sixth Amendment right to assistance of counsel.[4] Under the Sixth Amendment to the United States Constitution, an accused in a criminal prosecution is entitled to a speedy trial, an impartial jury, knowledge of the accusations against him, the ability to call and confront witnesses, and to assistance of counsel in his defense. U.S. CONST. AMEND. VI. "These fundamental rights are extended to a defendant in a state criminal prosecution through the Fourteenth Amendment." *Herring v. New York*, 422 U.S. 853, 857 (1975). "More specifically, the right to the assistance of counsel has been understood to mean that there can be no restrictions upon the function of counsel in defending a criminal prosecution in accord with the traditions of the adversary factfinding process that has been

---

[3] In his briefing, Coultas refers to theft. Conversion is the civil analogue to theft, which is a criminal charge not redressable in a civil action.

[4] Coultas's briefing makes passing reference to a claim for fraud on the court, a claim which carries no statute of limitations. The Supreme Court has characterized a fraud on the court as "a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot be complacently tolerated consistently with the good order of society." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944). Coultas's allegations do not give rise to this claim against the defendants to the present motion. Coultas also mentions, in his briefing on this motion, that he was improperly interrogated by Ludwig. However, the complaint makes no mention of this and the court declines to read into the complaint a claim for which there is no corroborating evidence on the record at summary judgment. In any event, such claim would fail for having a two-year statute of limitations.

constitutionalized in the Sixth and Fourteenth Amendments." *Id.* Here, Coultas alleged that he was prevented from communicating exculpatory evidence to his counsel by a state actor, which could implicate Sixth Amendment protections of his right to assistance of counsel.

Coultas's claim for a deprivation of his Sixth Amendment rights would arise through section 1983. Section 1983 itself does not contain a statute of limitations and federal courts apply the forum state's statute of limitations for personal injury claims. In Oregon, such claims are subject to a two-year statute of limitations. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1140 (9th Cir. 2000) (stating that the statute of limitations for section 1983 actions is governed by the state statute of limitations for personal injury claims which, in Oregon, is two years).

### B.   *Unlawful Deprivation of Personal Property*

Coultas does not specifically characterize his claim arising from the unlawful deprivation of his property. This claim could be construed as a claim for conversion, for negligence, or for an unlawful official act or failure to act, a somewhat obscure cause of action against a sheriff for liability incurred in the performance of an official act. That said, the specific identity of the claim alleged is only relevant, at this point, with respect to whether the statute of limitations had run at the time Coultas filed the present action.

Under Oregon law, "[c]onversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *In re Complaint as to the Conduct of Martin*, 328 Or. 177, 184, 970 P.2d 638 (1998). The statute of limitations for a claim of conversion is six years. *See* OR. REV. STAT. 12.080(4) ("An action for taking, detaining or injuring personal property, including an action for the specific recovery thereof . . . shall be commenced within six

years."). For claims of negligence, "the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." *Fazzolari v. Portland School District No. IJ*, 303 Or. 1, 17, 734 P.2d 1326 (1987). The statute of limitations for a negligence claim in Oregon is two years. *See* OR. REV. STAT. 12.110(1) (general tort).

Both claims, for conversion and negligence, are tort claims and are governed by the Oregon Tort Claims Act ("OTCA"). The OTCA provides that where a tort claim is asserted against "officers, employees, or agents of a public body acting within the scope of their employment or duties[,]" it must be "commenced within two years after the alleged loss or injury." OR. REV. STAT. 30.265(1), 30.275(9) (2009). Accordingly, regardless of whether the claim is characterized as one for negligence or for conversion, the statute of limitations is two years.

Coultas also references ORS 12.100(1) as governing the statute of limitations for a claim arising from the unlawful deprivation of his property. ORS 12.100(1) provides:

> An action against a sheriff or constable upon a liability incurred by the doing of an act in an official capacity and in virtue of the office of the sheriff or constable; or by the omission of an official duty, including the nonpayment of money collected upon an execution . . . shall be commenced within three years.

OR. REV. STAT. 12.100(1) (2009). Accordingly, such claim would carry a statute of limitations of three years. The court notes that this statute of limitations differs from the two-year statute of limitations set forth in the OTCA for tort claims brought against state officials. Sheriffs being state officials, and the underlying claim of conversion being a tort, this extended statute of limitations is directly at odds with the OTCA. That said, the court follows canons of statutory construction set forth under Oregon law to determine the limitations period for a claim under Oregon law. In

performing statutory construction, one general rule is that the court must, where possible, adopt a construction that "will give effect to all" provisions of that statute. OR. REV. STAT. 174.010(1). Where there is a true conflict between statutory provisions, "specific provisions control more general provisions." *Fireman's Fund Ins. Co. v. Ed Niemi Oil Co.*, 436 F. Supp. 2d 1174, 1178 (D. Or. 2006), *reversed on other grounds* (citing OR. REV. STAT. 174.010(2)).

As the two cited provisions are in conflict, the court recognizes that the three-year statute of limitations under ORS 12.100 is more specific than the general statute of limitations under the OTCA and applies the three-year statute of limitations to this particular claim.

II.  Accrual

Defendants argue that the factual record reveals that neither of Coultas's claims accrued more than two years prior to the date the present case was filed, January 13, 2011. In particular, Defendants cite the admissions contained in Coultas's Responses to Defendants' Requests for Admission. In his response, Coultas admitted each of the following: that his claims against Gilbert arise during his confinement at the jail in 2001 and 2002, matters about which Coultas also filed "jail inmate complaints"; that his claims against Ludwig are based on information Coultas discovered "in the three-day period prior to [his] January 28, 2008 new trial date[,]" and Ludwig's 2001 trial testimony; that his claims against the Jail arise from its status as employer of Gilbert and Russel; and that he contacted an attorney within days of his January 30, 2008, release date to explore the potential for civil claims against Defendants. (Warren Declaration, Ex. 4 at 2-3.) Coultas also admits specifically that "all of the events complained of in [his] lawsuit against the Yamhill County defendants occurred more than two years prior to the filing of your Complaint on January 13, 2011." *Id.* at 4.

Coultas argues that his claims did not accrue outside the applicable statute of limitations, on the following grounds: (1) his claim for theft of personal property has a six-year statute of limitations and his accrual date was delayed by Defendants' continued misrepresentations; (2) an unlawful official act or failure to act has a three year statute of limitations under ORS 12.100; (3) Coultas's claims comply with the "discovery rule" which provides that a limitations period begins running when the plaintiff realizes that he has a cause of action; (4) Coultas lacks a forum in state court; (5) Coultas's claim for fraud on the court has no statute of limitations; (6) the date of Coultas's exoneration is the date the statute of limitations begins running; and (7) the date Coultas's computer was recovered is the date the statute of limitations begins running.

The standard for when this the statute of limitations accrues is determined by federal law. *See Bailey v. Shelton*, No. CV 07-1905-CV, 2009 U.S. Dist. LEXIS 574, at *8-9 (D. Or. Jan. 6, 2009) ("The question of when a claim accrues is governed by federal law.") (citing *Johnson v. California*, 207 F.3d 650, 653 (9th Cir. 2000)). Under federal law, the period begins "when a plaintiff knows or has reason to know of the injury which is the basis of his action." *McCoy v. San Francisco, City & County*, 14 F.3d 28, 29 (9th Cir. 1994) (quoting *Hoesterey v. Cathedral City*, 945 F.2d 317, 318-19 (9th Cir. 1991)) (internal quotation marks omitted).

    A.    Section 1983

With respect to Coultas's Sixth Amendment claim, the statute of limitations began running when Coultas knew or had reason to know of his injury. This claim arises from an incident wherein allegedly exculpatory evidence was confiscated by jail personnel, thus interfering with the adversary factfinding process. This incident took place in April 2001, almost ten years prior to the date this action was filed, January 13, 2011. Coultas had knowledge of this incident when it occurred and,

thus, the events giving rise to this claim took place outside the two-year statute of limitations. Accordingly, this claim is barred.

B.     *Unlawful Deprivation of Property*

Coultas's claim regarding the destruction of his property by the Sheriff is premised on evidence that was seized in connection with his arrest which was subsequently destroyed or abandoned by the Sheriff's Department. On April 9, 2008, Coultas's seized property was released. On May 1, 2008, Coultas learned that his property had been "sold, lost and/or destroyed years prior." (Pl.'s Resp. 5.) Thus, at the very latest, Coultas became aware of his injury on that date. Accordingly, claims for negligence and conversion are barred because Coultas filed his claim after May 1, 2010.

Coultas's claim for unlawful deprivation of property by a sheriff or constable survives summary judgment on statute of limitations grounds. Coultas does not challenge the seizure itself, but alleges injury arising from the subsequent loss and destruction of his property. As above, the discovery rule applies under federal law, and thus statutes of limitation begin when a party discovers or should have discovered its injury. Thus, Coultas's claim accrued when he realized that his property had been lost or destroyed by the Sheriff's Department. Coultas's claim for unlawful deprivation of property is not barred by the statute of limitations because Coultas filed this action on January 13, 2011, less than three years from the date he discovered his injury.

Defendants rely on Coultas's admission that all of the events giving rise to the lawsuit happened more than two years prior to its filing. This is insufficient, however, to establish that his claims are actually barred, as it ignores the discovery rule, which permits claims to accrue upon discovery of the injury which may occur months or years subsequent to the injury itself. Coultas

does not argue that his property was illegally seized. He argues that it was mishandled at some point after seizure such that he was deprived of his own property. The only evidence in the record before the court as to when this deprivation was discovered is Coultas's assertion that it was discovered in May 2010. Accordingly, there is at least a genuine issue of material fact regarding accrual of the statute of limitations from this claim and summary judgment is denied.

*Conclusion*

For the reasons stated, Defendants' Motion for Summary Judgment (#33) is GRANTED in part and DENIED in part, consistent with this disposition.

IT IS SO ORDERED.

DATED this 12th day of December, 2011.

JOHN V. ACOSTA
United States Magistrate Judge